EL PUEBLO, APELADO, *v.* DAVID, APELANTE.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección 2ª.

No. 602.—Resuelto en junio 23, 1913

FALSIFICACIÓN DE PRUEBAS—ALTERACIÓN FRAUDULENTA DE UNA CARTA.—Examinadas la ley y las pruebas en este caso se resolvió, que quedaron demostrados los tres elementos esenciales del delito de falsificación de pruebas perseguido, a saber: 1. La existencia de un procedimiento legal; 2. Una carta antedatada fraudulentamente; y 3. La presentación por el acusado como prueba en el dicho procedimiento legal, de la expresada carta como genuina sabiendo que había sido antedatada fraudulentamente.

VEREDICTO DEL JURADO—REGULARIDAD EN LA MANERA DE RENDIRLO.—Después de presentado el veredicto del jurado la corte preguntó individualmente a cada uno de los jurados si ese era el veredicto y todos contestaron afirmativamente, añadiendo uno de ellos que el veredicto que había dado había sido muy forzado, porque era un hombre muy ocupado, tenía su señora enferma y muchas cosas en su cabeza, pero a preguntas del juez ratificó que ese era su veredicto. Se resolvió que las manifestaciones hechas por aquel jurado no viciaban de nulidad el veredicto.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. Willis Sweet* y *Manuel F. Rossy.*

Abogado del Pueblo: *Sr. Charles E. Foote, Fiscal.*

EL JUEZ ASOCIADO SR. DEL TORO emitió la opinión del tribunal.

La acusación en este caso, en lo pertinente, dice así:

"El citado Albert A. David allá el día 26 de diciembre de 1911, en el Distrito Judicial de San Juan, en un juicio civil seguido por el citado Albert A. David contra J. Ross Smith en la Corte Municipal de San Juan, ofreció en prueba, como genuina, una carta, sabiendo que había sido alterada fraudulentamente."

El acusado hizo la alegación de no culpable y solicitó juicio por jurado. El juicio se celebró el 16 de mayo de 1912 y el jurado después de oir las alegaciones, las pruebas y las instrucciones de la corte, rindió su veredicto declarando culpable al acusado.

Albert A. David pidió la celebración de un nuevo juicio. La corte la negó por resolución de 27 de mayo de 1912 y acto seguido procedió a dictar sentencia condenando al convicto a sufrir la pena de seis meses de presidio con trabajos forzados. Contra la resolución denegatoria del nuevo juicio interpuso David el presente recurso de apelación, cuya vista tuvo lugar ante este Tribunal Supremo el 10 de junio de 1913.

Los motivos alegados para solicitar el nuevo juicio fueron dos, a saber:

"1. Porque el veredicto fué contrario a la prueba, porque no se probó que el documento que se alegó había sido falsificado, fué ofrecido como prueba por el acusado, en la corte municipal, y porque la prueba en su conjunto, no era suficiente para probar la culpabilidad del acusado fuera de una duda razonable.

"2. Porque el veredicto que dió el jurado era informal, irregular, e ilegal, porque no era una expresión libre de la voluntad de todos los miembros del jurado; que no era unánime, y fué dado por el jurado Sr. Félix Negrón, contra su voluntad, y obligado por razones fuera de la prueba que se presentó en el caso, como se acredita por una parte del récord que va adjunta y que se hace una parte de esta moción."

Procederemos a examinar en primer término la prueba practicada, para ver si es o nó suficiente para sostener el veredicto del jurado, y luego examinaremos la cuestión relativa a las manifestaciones hechas por el jurado Señor Negrón.

La ley sustantiva reguladora de este caso está contenida en el artículo 126 del Código Penal que, copiado a la letra, dice así:

"Artículo 126. Toda persona que en algún juicio, procedimiento, acusación o investigación autorizada por la ley, ofreciere en prueba, como genuino o verdadero, algún libro, papel, documento, registro, u otro instrumento escrito, sabiendo que ha sido falsificado, alterado, o antedatado fraudulentamente, será culpable de delito grave (*felony*)."

Para que se entienda perpetrado el delito perseguido es, pues, necesario que se demuestre la existencia de tres elementos esenciales:

1. Un procedimiento, acusación o investigación autorizado por la ley;

2. Un libro, papel, documento, registro u otro instrumento escrito falsificado, alterado o antedatado fraudulentamente;

3. Una persona que conociendo la falsificación, alteración o antedatación del libro, papel, documento, registro u otro instrumento escrito, lo ofrezca en prueba como genuino o verdadero, en el procedimiento, acusación o investigación autorizado por la ley.

La existencia del primer elemento quedó demostrada. Un pleito civil en cobro de pesos seguido en una corte municipal, es un procedimiento autorizado por la ley, y en este caso por las declaraciones del juez y del secretario de la Corte Municipal de San Juan y por los mismos autos originales, se probó que Albert A. David entabló una demanda en dicha corte municipal contra James Smith en cobro de pesos.

También quedó demostrada la existencia del segundo ele-

mento.  Una carta fué alterada fraudulentamente.  La carta
dice así:

"*September 18, 1911.  Dear Sir: If you find a purchaser for
my contract on the Guy H. Oyster property any time within four
months for the sum of $6,000, or more, I will allow you a commission
of 5 per cent.  If sold for less than the above sum, the commission to
be 5 per cent on the first $1,000 and 2 1/2 per cent on the balance
of the price sold for.  J. Ross Smith to Capt. A. A. David.  N. B.
The above agreement or offer is not to prevent me from selling the
property in the meantime if I find an independent purchaser.  J. Ross
Smith.*"

La alteración fraudulenta de la carta consiste en haberse
sustituído las palabras "*one month*" por las palabras "*four
months.*"  La alteración como hecho se admitió por el propio
acusado, y que fué fraudulenta se demuestra como sigue:

David, el acusado, declaró que la alteración la había hecho
el mismo Smith, firmante de la carta.  El jurado no creyó
a David, sino a Smith que dijo que él había escrito la carta,
pero no las palabras alteradas; que el original que entregó
a David decía "*one month,*" y que no volvió a ver el docu-
mento hasta que se presentó en el juzgado; al juez munici-
pal que declaró, que cuando se presentó el documento como
prueba Smith se sorprendió y lo impugnó como falso, y al
litógrafo Julio Snach que depuso, exponiendo los motivos
que lo llevaban a sostener tales conclusiones, que las enmien-
das no se habían hecho por la misma persona que escribió
el documento y que las tintas usadas para escribir la en-
mienda y la carta en su totalidad se diferenciaban.  El perito
de la defensa, Señor Timothée, se limitó a declarar, en resu-
men, que no podía determinarse por el solo examen de la
carta si el que la escribió fué el mismo que hizo las enmiendas.

Y por último, también quedó demostrada la existencia del
tercer elemento.  Una persona, el acusado, sabiendo que la
carta había sido alterada fraudulentamente, la presentó en
prueba como genuina, en el pleito seguido por él contra
Smith en la corte municipal en cobro de pesos.  La prueba

demuestra que Smith en 18 de septiembre de 1911 comisionó a David para que le vendiera una finca de su propiedad que estaba embargada y que iba a subastarse el 1 de diciembre de 1911, dándole para ello el plazo de un mes y ofreciendo pagarle cierta suma por sus gestiones. Pasó el mes y la finca no fué vendida, siéndolo luego por su propio dueño, sin intervención de David. Este reclamó su comisión a Smith y Smith se negó a pagarla. Entonces David entabló el pleito ante la corte municipal y presentó en prueba la carta alterada fraudulentamente, carta que era de gran importancia en el pleito porque si las palabras cuatro meses eran ciertas, entonces la venta se había verificado dentro del período de la comisión conferido por Smith a David.

Visto, pues, el resultado de la prueba, teniendo en cuenta la forma en que aparece la enmienda hecha aparentemente con la intención de que no se notara y que el plazo de cuatro meses que vencía después del día fijado para la subasta era innecesariamente largo, ya que el propósito de Smith era encontrar un buen comprador antes de la subasta, y apreciando todas las circunstancias del caso, es necesario concluir que la prueba sostiene el veredicto del jurado.

Examinemos la segunda cuestión suscitada. Cuando volvió el jurado con su veredicto a la sala de la corte ocurrió lo siguiente: El juez preguntó: "¿Quieren las partes que se pregunte personalmente a cada jurado si ése es su veredicto?" Falcón: "Sí señor." "Señor Angel Rivero, ¿es ése su veredicto?" "Sí señor," "Señor José A. Rexach, ¿es ése su veredicto?" "Sí señor." " Señor Ramón Daubón, ¿es ése su veredicto?" "Sí señor." "Señor Carlos Preston, ¿es ése su veredicto?" "Sí señor." "Señor Justino Díaz, ¿es ése su veredicto?" "Sí señor." "Señor Jorge Fernández Látimer, ¿es ése su veredicto?" "Sí señor." "Señor Segundo Más, ¿es ése su veredicto?" "Sí señor." "Señor Manuel Campos, ¿es ése su veredicto?" "Sí señor." "Señor Ramón Berríos, ¿es ése su veredicto?" "Sí señor." "Señor José Escalera, ¿es ése su veredicto?" "Sí señor."

"Señor José G. Nieves, ¿es ése su veredicto?" "Sí señor." "Señor Félix Negrón, ¿es ése su veredicto?" "Sí señor. Ese es mi veredicto, pero debo hacer constar que yo soy un hombre de trabajo, muy ocupado, y en segundo lugar tengo mi señora enferma, y me ha causado mucho trabajo el veredicto." Juez: "Esa es otra cuestión." Falcón: "Yo deseo que conste esa manifestación del jurado. De lo que el jurado ha dicho se deduce que le han obligado a dar el veredicto * * *." Juez: "No es eso: no anticipe la defensa ideas que no han sido expresadas por el jurado. Siéntese." Juez: "¿Qué ha querido decir usted, jurado?" Jurado: "He querido decir que es un veredicto muy forzado el que he dado, porque yo soy un hombre muy ocupado, y además, tengo mi señora enferma, y tengo muchas cosas en la cabeza." Juez: "No tenemos que ver las razones que ha tenido para dictar ese veredicto; la pregunta es si ése es su veredicto o nó." Jurado: "Ese es mi veredicto." Juez: "Se acepta el veredicto por ser formal, y la corte declara al acusado convicto del delito de falsificación de prueba, y señala para dictar sentencia el lunes a las nueve de la mañana." Falcón: "La defensa toma excepción de la resolución de la corte, fundada en las manifestaciones que ha hecho el jurado."

Opinamos que habiendo finalmente contestado el jurado categóricamente: "Ese es mi veredicto," el rendido es válido, y para ello nos fundamos en la jurisprudencia que citamos a continuación.

"No hay nada que levante una sospecha de que el veredicto no fué el resultado de la convicción consciente y unánime de los jurados. Uno de ellos dudó al principio, como cualquier hombre puede dudar en ocasión tan solemne, pero, después de haber consultado con sus compañeros y deliberado, se unió a ellos pública y espontáneamente en el veredicto." *State* v. *Godwin,* caso de N. Carolina, reportado en 44 Am. Dec., 42 y 44.

"No hubo error al desestimar la moción por el sexto de sus fundamentos, a saber: que uno de los jurados, al tomár-

sele el voto, respondió que se había conformado con el vere-
dicto pero con disgusto. La conformidad del jurado con el
veredicto es suficiente de acuerdo con la ley. Si se fueran
a desestimar los veredictos porque algunos jurados los rin-
dieran a disgusto, muy pocos veredictos quedarían en pie en
casos importantes.'' *Parker* v. *State.* Caso de Georgia re-
portado en 6 Southeastern Reporter, 600, 601.

''Después que el jurado había entregado su veredicto, se
le tomó el voto individualmente, y todos los jurados contes-
taron que el entregado era su veredicto, excepto uno, el Señor
Chaplin, que primeramente contestó que había consentido
bajo protesta y después contestó: 'Yo consentí bajo protesta.'
La corte entonces dijo al jurado: 'Señor Chaplin, ¿es éste
su veredicto?' y el jurado contestó: 'Lo es, pero he consen-
tido bajo protesta.' La corte disolvió al jurado. Inmediata-
mente después de la disolución del jurado, y no antes, el abo-
gado del demandante se opuso a que se recibiera el veredicto,
y la corte desestimó la oposición. Bajo las circunstancias
del caso, creemos que no se cometió error en este respecto.''
*Wyley* v. *Bull,* caso de Kansas reportado en 20 Pacific Re-
porter, 855, 857.

''Se consignó expresamente en el veredicto que el jurado
encontró culpable al acusado de asesinato en primer grado,
*como se imputa en la acusación,* y que el reo fué acusado en
la acusación como principal y no como cómplice. Cuando los
jurados contestaron que ese era su veredicto, debe presumirse
que entendían el significado del mismo. Creemos que nunca
se ha entendido que al permitirse tomar el voto a un jurado
se permita interrogar a los jurados más allá que esta pre-
gunta directa a cada uno: '¿Es este vuestro veredicto?' Si
responde en la afirmativa, su repuesta es concluyente, y no
se permite mayor investigación. Si la regla fuera otra, cada
jurado podría ser sujeto a un examen escudriñador con la
mira de mostrar que se había equivocado en el veredicto que
había rendido y que había anunciado como tal solemnemente;
práctica que no sería razonable y que redundaría en perjuicio

de los fines de la justicia." *Bean* v. *The State,* 17 Texas Court of Appeals, 60, 69.

Por virtud de todo lo expuesto y habiendo examinado la transcripción de los autos y llegado a la conclusión de que no aparece que se haya cometido error fundamental alguno, opinamos que debe confirmarse la resolución apelada.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf y Aldrey.

El Juez Asociado Sr. MacLeary no tomó parte en la resolución de este caso.